IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

No. 4:12-CV-189-FL

| | |
|---|---|
| JEFFREY D. MOORE, )<br>)<br>Claimant, )<br>)<br>)<br>v. )<br>)<br>CAROLYN W. COLVIN, Commissioner of )<br>Social Security, )<br>)<br>Defendant. ) | **MEMORANDUM AND<br>RECOMMENDATION** |

This matter is before the court on the parties' cross motions for judgment on the pleadings [DE-22, DE-24] pursuant to Fed. R. Civ. P. 12(c). Claimant Jeffrey Moore ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) seeking judicial review of the denial of his applications for a period of disability and Disability Insurance Benefits ("DIB"). The time for filing responsive briefs has expired and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, this court recommends denying Claimant's Motion for Judgment on the Pleadings, granting Defendant's Motion for Judgment on the Pleadings and upholding the final decision of the Commissioner.

**STATEMENT OF THE CASE**

Claimant protectively filed an application for a period of disability and DIB on July 6, 2006, alleging disability beginning March 1, 2006.[1] (R. 121). His claim was denied initially and upon

---

[1] Claimant filed a subsequent claim for disability benefits on January 12, 2009. The Appeals Council indicated that its action with respect to the first ALJ decision regarding Claimant's first claim renders this subsequent claim duplicate. The Appeals Council instructed the ALJ, on remand, to associate the claim files and issue a new decision on the associated claims. (R. 131). Therefore, ALJ Miller

reconsideration. *Id.* A hearing before Administrative Law Judge ("ALJ") Jon Hunt was held on November 19, 2008, at which Claimant was represented by counsel. *Id.* On December 19, 2008, the ALJ issued a decision denying Claimant's request for benefits. (R. 121-128). On August 21, 2010, the Appeals Council remanded the claim to the ALJ for further administrative proceedings. (R. 129). A second administrative hearing before ALJ Miller was held on January 19, 2011, at which Claimant was represented by counsel, and a VE appeared and testified. (R. 18). On February 15, 2011, the ALJ issued a second decision denying Claimant's claim. (R. 18-27). Claimant then requested a review of the ALJ's decision by the Appeals Council (R. 14), and submitted additional evidence as part of his request (R. 4, 905-922). After reviewing and incorporating the additional evidence into the record, the Appeals Council denied Claimant's request for review of ALJ Miller's second administrative decision on July 14, 2012. (R. 1-4). Claimant then filed a complaint in this court seeking review of the now final administrative decision.

## STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount

---

associated the claim files and issued a new decision on both claims. (R. 18, 67).

of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

## DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. § 404.1520 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 474 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. § 404.1520a(b)-(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from

3

a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. *Id.* § 404.1520a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* § 404.1520a(e)(3).

In this case, Claimant alleges the following errors by the ALJ: (1) improper assessment of Claimant's credibility and (2) improper assessment of the opinion evidence. Pl.'s Mem. Supp. Pl.'s Mot. J. Pleadings ("Pl.'s Mem.") at 9, 11.

## FACTUAL HISTORY

### I. ALJ's Findings

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant was no longer engaged in substantial gainful employment. (R. 20). Next, the ALJ determined Claimant had the following severe impairments: left shoulder adhesive capsulitis; hammertoes; major depressive disorder; cervical spondylosis; carpal tunnel syndrome; and lumbar degenerative disc disease. *Id.* However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 21). Applying the technique prescribed by the regulations, the ALJ found that Claimant's mental impairments have resulted in mild restriction in his activities of daily living, mild difficulties in social functioning, and moderate difficulties in concentration, persistence and pace with no episodes of decompensation. *Id.*

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the

4

ability to perform light work[2] with the following physical limitations: frequent fingering and handling, occasional reaching overhead with left upper extremity, occasional balancing and climbing, and frequent stooping, kneeling, crouching, kneeling and crawling. (R. 21). The ALJ also identified Claimant could only perform simple, routine and repetitive tasks. (R. 21-22). In making this assessment, the ALJ found Claimant's statements about his limitations not fully credible. (R. 22-25). At step four, the ALJ concluded Claimant had the RFC to perform the requirements of his past relevant work as a production assembler (DOT# 706.687-010). (R. 25). In the alternative, the ALJ proceeded to step five and determined, considering Claimant's age, education, work experience and RFC, that Claimant is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national economy, including cashier II (DOT# 211.462-010), office cleaner (DOT# 323.687-014), and photocopy machine operator (DOT# 207.685-014). (R. 26).

## II. Claimant's Testimony at the Administrative Hearing

At the time of Claimant's administrative hearing, Claimant was 54 years old and unemployed. (R. 67, 74). Claimant is a high school graduate. (R. 67). Claimant was last employed full-time with Parrish Frames for approximately three years, where he was a lathe machine operator and supervisor cutting wood patterns for furniture. (R. 80). Claimant's past work experience also includes welding air conditioning vents for ceilings, assembly line worker, machine technician, and

---

[2] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If an individual can perform light work, he or she can also perform sedentary work, unless there are additional limiting factors such as the loss of fine dexterity or the inability to sit for long periods of time. 20 C.F.R. § 404.1567(b).

5

packager. (R. 79, 81-83). Claimant was employed part-time as a cashier and stocker with the ABC store for approximately four months following his alleged onset date. (R. 75). Claimant testified he had to quit work with the ABC store because he was dropping bottles and unable to walk, bend, and lift to the extent required by the job. (R. 77).

Claimant explained numerous medical conditions support his disability claim and his inability to work full-time. These medical conditions include pain in his back from disc disease, left foot, left shoulder, left hand, and carpal tunnel syndrome. Claimant testified he cannot raise his left shoulder over his head and any repetitive movement of the left upper extremity is painful. (R. 84-85). Claimant wears a brace on his hand throughout the day, except while sleeping, to help with his carpal tunnel and he has difficultly grasping objects with his fingers to the point that he has stopped trying. (R. 96-97). Claimant testified that his lower back is problematic and he cannot sit or stand for long periods of time. (R. 86). Claimant testified he experiences pressure in his lower back while sitting, cannot sit for more than two hours, and has difficulty rising from a seated position. (R. 96). Further, Claimant testified he cannot bend over or pick-up objects and that activities requiring him to be on his feet produces pain, tingling and numbness on his whole left side. (R. 86, 94-95). Claimant also testified that he has difficulty pushing or pulling. (R. 95).

Claimant testified that he has a bad arch and toe problems in his left foot and experiences tingling and numbness when he walks a lot. (R. 88). Claimant wears a brace on his left foot throughout the day. (R. 88, 102). Claimant testified his foot difficulties are painful and limit him to walking short distances of approximately six feet. (R. 90). Claimant testified he must sit and rest his foot after walking and sometimes experiences difficulty balancing on his feet. (R. 90, 102). Claimant testified that standing on his feet does not produce as much foot pain as walking and that

6

he can stand for approximately 45 minutes. (R. 91). However, Claimant testified he experiences back pain from standing. *Id.* Claimant testified that when he begins hurting he will sit down in his recliner to rest for approximately three hours. (R. 92). Claimant also testified he had surgery on his left foot in 2003 related to his toe problems and that he currently cannot move his middle toes. (R. 88). Claimant testified that he saw a podiatrist who suggested amputation of one of his toes to get better movement, but that he did not receive the surgery. (R. 89).

Claimant testified that he takes Hydrocodone and Diclofenac for pain twice daily. (R. 98). Claimant testified that his pain on a typical day is a six on a 10-point scale and that physical activities elevate the pain. *Id.* Claimant testified he often wakes up during the night from pain in either his back, shoulder, or feet. (R. 99). Claimant testified he also takes medication for depression and sleeping. *Id.* Claimant testified he has difficultly concentrating for more than two hours and frequently forgets what he is doing. (R. 100). Claimant testified pain often interrupts his concentration. *Id.* Claimant testified he is moody and irritable. (R. 101). Claimant testified he receives assistance from his daughter in vacuuming, washing dishes, and cooking. *Id.*

### III. Vocational Expert's Testimony at the Administrative Hearing

Ann Neulicht testified as a VE at the administrative hearing. (R. 103-114). After the VE's testimony regarding Claimant's past work experience (R. 103-05), the ALJ asked the VE to assume a hypothetical individual of the same age, education and prior work experience as Claimant and posed two hypothetical questions. First, the ALJ asked whether the individual could perform Claimant's past relevant work assuming the individual has the physical capacity to perform light work with no more than frequent fingering and handling, occasional balancing and climbing, frequent stooping, crouching, kneeling, and crawling and is limited to simple, routine and repetitive

7

Case 4:12-cv-00189-FL Document 27 Filed 08/28/13 Page 7 of 18

tasks. (R. 105-06). The VE responded that the hypothetical individual could perform past relevant work as a production assembler. (R. 106). The ALJ next asked whether other work would be available to the same individual. *Id.* The ALJ responded that the hypothetical individual could perform work as a cashier II (DOT# 211.462-010), office cleaner (DOT# 323.687-014), and photocopy machine operator (DOT# 207.685-014). (R. 106-07). The ALJ followed-up by asking whether any of those jobs could be performed with a sit/stand option. (R. 107). The VE responded that the photocopy machine operator, as well as some cashier jobs, could be performed with the sit/stand option. *Id.*

Claimant's attorney next questioned the VE. Claimant's attorney asked the VE whether a hypothetical individual limited to occasional standing/walking during an eight-hour workday would be capable of performing Claimant's past relevant work. (R. 107-08). The VE testified that some production assembler positions would accommodate that limitation. (R. 108). Claimant's attorney next asked the VE whether the same hypothetical individual could perform Claimant's past relevant work if they were limited to occasional use of the upper extremities at any range. (R. 109). The VE responded that production jobs would be precluded as well as other past relevant work. (R. 110). Claimant's attorney next asked whether the same hypothetical individual, but this time with the limitation of occasional overhead use of the upper extremity, would be able to perform past work. (R. 110-11). The VE testified that the past work and other jobs previously identified do not require use of overhead reaching. (R. 111). Claimant's attorney next asked the VE to assume the hypothetical individual given by the ALJ, but with the additional limitation that he is unable to perform balancing activities on his feet, and asked whether he could perform work as a production assembler. (R. 111-12). The VE testified that no balancing was required in the production

8

assembler job under the classifications. (R. 112). The VE next asked whether there was a minimum time in which the hypothetical individual, given a sit/stand option, had to remain in either the seated or standing position or else be precluded from work. (R. 113). The VE responded that she was not aware of a minimum for each position within the sit/stand option. *Id.* Finally, Claimant's attorney asked the VE whether an individual only able to concentrate for two hours at a time would be able to perform past work. (R. 114). The VE responded that an individual unable to perform simple, routine, repetitive tasks on a sustained basis was precluded from substantial gainful activity. *Id.*

## DISCUSSION

### I. The ALJ properly assessed Claimant's credibility.

Claimant contends that the ALJ made a conclusory finding as to Claimant's credibility and failed to provide an explanation as to why he found Claimant not credible. Pl.'s Mem. at 11. This court disagrees.

Federal regulation 20 C.F.R. § 404.1529(a) provides the authoritative standard for the evaluation of subjective complaints of pain and symptomology. *See Craig*, 76 F.3d at 593. Under these regulations, "the determination of whether a person is disabled by pain or other symptoms is a two-step process." *Id.* at 594. First, as an objective matter, the ALJ must determine whether Claimant has a medical impairment which could reasonably be expected to produce the pain or other symptoms alleged. *Id.*; *see also* SSR 96-7p, 1996 WL 374186, at *2. If this threshold question is satisfied, then the ALJ evaluates the actual intensity and persistence of the pain or other symptoms, and the extent to which each affects a claimant's ability to work. *Craig*, 76 F.3d at 595. The step two inquiry considers "all available evidence," including objective medical evidence (i.e., medical signs and laboratory findings), medical history, a claimant's daily activities, the location, duration,

9

frequency and intensity of symptoms, precipitating and aggravating factors, type, dosage, effectiveness and adverse side effects of any pain medication, treatment, other than medication, for relief of pain or other symptoms and functional restrictions. *Id.* at 594; *see also* 20 C.F.R. § 404.1529(c)(3); SSR 96-7p, 1996 WL 374186, at *3. The ALJ may not discredit a claimant solely because his subjective complaints are not substantiated by objective medical evidence. *Craig*, 76 F.3d at 595-96. However, neither is the ALJ obligated to accept the claimant's statements at face value; rather, the ALJ "must make a finding on the credibility of the individual's statements based on a consideration of the entire case record." SSR 96-7p, 1996 WL 374186, at *3. The Social Security regulations require that an ALJ's decision "contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and reasons for that weight." *Id.* "Because he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight." *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984).

By all accounts, the ALJ conducted the two-step inquiry by first determining that Claimant's medically determinable impairments could reasonably have been expected to cause his alleged symptoms, and then determining that his statements concerning intensity, persistence, and limiting effects of his symptoms were not credible. However, Claimant contends the ALJ's credibility finding does not comply with the legal standards set out in SSR 96-7p and 20 C.F.R. § 404.1529 specifically requiring the ALJ to articulate reasons for his finding that Claimant is not credible. Pl.'s Mem. at 11-12. Claimant's argument appears to relate solely to his credibility regarding physical complaints because Claimant cites only his allegations of pain in his left shoulder, left hand, left foot

10

and back. *Id.* at 12.

The court's review of the ALJ opinion indicates the ALJ provided specific reasons for his adverse credibility finding. While the ALJ's opinion does not include a summary paragraph explicitly enumerating the various reasons for his credibility finding, the ALJ's opinion in its entirety makes clear for this court, the reviewing court, the reasons for which he found Claimant not fully credible. The ALJ summarized Claimant's medical records extensively and made clear within his discussion the specific reasons supporting his adverse credibility finding. Specifically, the ALJ noted the following with respect to Claimant's alleged physical limitations: (1) a September 2006 VA Medical Center treatment note indicating Claimant has a history of hammertoe and reported doing well after surgery, but pain has returned when walking (R. 22, 415); (2) a September 12, 2006 treatment note indicating that Claimant complained of shoulder and neck pain, yet reported not taking anything for pain (R. 22, 387); (3) a October 30, 2006 treatment note from Tarboro Internal Medicine indicating Claimant complained of worsening shoulder pain, occasional neck pain, a little back pain, but nothing severe, and there were no major findings on examination and follow-up was to be in six months (R. 23, 389-90); (4) an orthopedic evaluation on November 27, 2006 for left shoulder pain indicating Claimant was not taking medication, X-rays of the left shoulder showing slight narrowing of the Glenohumeral joint, but otherwise normal findings, a diagnosis of adhesive capsulitis in the left shoulder and a prescription for medication and physical therapy (R. 23, 421-22); (5) a subsequent orthopedic treatment note on April 2, 2007 indicating that Claimant reported his left shoulder "feels significantly better" after finishing physical therapy and physical exam showing Claimant had regained full range of motion of left shoulder (R. 23, 425); (6) a podiatry consult treatment note on October 15, 2008 indicating Claimant was in mild discomfort with an antalgic gait

11

(R. 23, 419); (7) a physical consultative examination on March 18, 2009 indicating no major problems except for an inability to raise the left arm to shoulder level (R. 23, 687-691); (8) foot X-rays on March 18, 2009 indicating mild pathology (R. 23, 692); (9) a June 9, 2009 treatment note from Eastern Carolina Foot & Ankle Specialists indicating Claimant reported his left foot was doing a lot better and the brace was quite helpful (R. 24, 434); (10) subsequent notes from the same provider indicating Claimant was using accommodative shoes and orthosis on the left side, doing well, and minimally symptomatic (R. 24, 434); (11) a lumbar MRI on July 11, 2009 showing mild to moderate degenerative disc disease and a cervical MRI indicating multi-level moderate spondylosis (R. 24, 456-458); (12) Claimant had a severely contracted painful left third toe without neuropathy whereby amputation surgery was discussed, but treating providers wanted to hold off, Claimant was reluctant, and Claimant wanted a FCE completed (R. 24, 432, 442, 486); and (13) Claimant reported in December 2009 that he provides care for his daughter with cerebral palsy (R. 24, 468).

Contrary to Claimant's assertion, the court finds that the ALJ adequately provided reasons supporting his credibility finding pursuant to the framework outlined in the regulations and discussed all relevant evidence. *See Shively*, 739 F.2d at 989 (noting an ALJ's observations regarding credibility should be given great weight). In addition to the objective medical evidence, the ALJ also considered the factors set forth in 20 C.F.R. § 404.1529. The ALJ clearly considered Claimant's reports in the treatment notes regarding pain or discomfort, his use of pain medication, the type of treatment, if any, prescribed for Claimant's shoulder, back, and feet, the frequency of treatment, observations by treating physicians upon exam, and diagnostic testing performed. It is apparent to this court that the ALJ relied on the minimal diagnostic findings, conservative treatment methods,

minimal pain medication usage by Claimant, and improvement from physical therapy and use of braces in determining that Claimant was not fully credible. (R. 22-25). Additionally, Claimant was caring for his daughter diagnosed with cerebral palsy. The ALJ did not dispute that Claimant experienced pain in his foot, shoulder, and back, however, the fact that Claimant experienced pain does not contradict a finding that Claimant is not fully credible. The ALJ found Claimant capable of performing light work with the addition of several physical limitations indicating the ALJ did credit Claimant to a certain extent. (R. 21). The decision that Claimant can perform light work despite multiple state agency physical RFC assessments indicating Claimant was capable of medium exertion work with limitations (R. 385, 702, 834), reflects the weight and credibility he afforded Claimant's subjective statements about his symptoms. The fact that Claimant may point to other evidence in the record that supports the alleged severity of his pain does not diminish the ALJ's analysis. *See, e.g., Piney Mountain Coal Co. v. Mays*, 176 F.3d 753, 762 n.10 (4th Cir. 1999) (noting the ALJ need not discuss every piece of evidence). In short, the ALJ comported fully with the credibility evaluation. *See Mickles v. Shalala*, 29 F.3d 918, 929 (4th Cir. 1994) ("Subject only to the substantial evidence requirement, it is the province of the [ALJ], and not the courts, to make credibility determinations."). For the foregoing reasons, Claimant's argument as to this issue is without merit.

## II.  The ALJ properly assessed the opinion evidence.

Claimant contends the ALJ's RFC determination is not supported by substantial evidence because the ALJ improperly considered the opinion evidence. Pl.'s Mem. at 9-10. Specifically, Claimant contends the ALJ improperly considered the consultative examination opinion of Dr. Kumar and the Physical Work Performance Evaluation, or FCE, by Nathan Hill, MPT, of Select

13

Physical Therapy. *Id.* This court disagrees.

As set forth in regulation 20 C.F.R. § 404.1527(b), the ALJ is to consider all relevant evidence in the case record when he makes a determination about whether the individual is disabled. The ALJ is to evaluate every medical opinion received and, in general, the ALJ should give more weight to the opinion of an examining medical source than to the opinion of a non-examining source. *Id.* § 404.1527(c). As for state agency consultants, "[f]indings of fact made by State agency . . . consultants . . . regarding the nature and severity of an individual's impairment(s) must be treated as expert opinion evidence of non-examining sources at the [ALJ] and Appeals Council levels of administrative review." SSR 96-6p, 1996 WL 374180, at *1. Moreover, when considering the findings of state agency consultants, the ALJ must

> evaluate the findings using relevant factors . . . , such as the [consultant's] medical specialty and expertise in [the Social Security Administration's] rules, the supporting evidence in the case record, supporting explanations provided by the [consultant], and any other factors relevant to the weighing of the opinions.

20 C.F.R. § 404.1527(f)(2)(ii). The ALJ must explain the weight given to these opinions in his decision. *Id.*; *see also* SSR 96-6p, 1996 WL 374180, at *1. Pursuant to the regulations, a physical therapist is not considered an acceptable medical source. *See* 20 C.F.R. § 404.1513(a) (defining "acceptable medical sources" as licensed physicians, licensed or certified psychologists, licenced optometrists, licensed podiatrists, and qualified speech-language pathologists). Nonetheless, "evidence from other sources," such as therapists, may be used "to show the severity of [a claimant's] impairment(s) and how it affects [his] ability to" engage in work-related activities. *Id.* § 404.1513(d) (including as "other sources" nurse practitioners, physicians' assistants, school teachers and social workers); *see also* SSR 06-03p, 2006 WL 2329939, at *2 (explaining the

14

opinions from "other [medical] sources . . . may provide insight into the severity of [a claimant's] impairment and how it affects [a claimant's] ability to function"). Since medical sources such as therapists "have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians," their "[o]pinions . . . *are important and should be evaluated* on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file." SSR 06-03p, 2006 WL 2329939, at *3 (emphasis added). Indeed, "depending on the particular facts in a case, and after applying the factors for weighing opinion evidence, an opinion from a medical source who is not an 'acceptable medical source' may outweigh the opinion of an 'acceptable medical source,' including the medical opinion of a treating source." *Id.*

Claimant contends the ALJ failed to discuss the inconsistency between the consultative examination of Dr. Kumar and the RFC determination relating to limitations in the use of Claimant's left arm. Pl.'s Mem. at 9. Dr. Kumar performed a one-time evaluation of Claimant on March 18, 2009 and opined that Claimant had problems raising his left arm above shoulder level. (R. 688). The ALJ acknowledged that Dr. Kumar reported no major problems on examination except that Claimant had some limitation in lifting his left arm above shoulder level (R. 23), but the ALJ did not assign great weight to this limitation based on his consideration of other evidence of record. The ALJ's RFC concluded that Claimant could engage in occasional overhead reaching with the left upper extremity. (R. 21). While the ALJ did not explicitly state his reason for not finding Claimant unable to perform *any* overhead reaching, which Claimant argues is error, it is clear from the ALJ's opinion that he did not include such limitation in his RFC because he did not find this limitation consistent with the record on the whole. The ALJ's summary of the medical findings clearly

15

indicates this is so. Specifically, the ALJ considered and gave moderate weight to other state agency assessments which concluded, in three separate examinations by three separate reviewing physicians, that Claimant was capable of occasional overhead reaching with his upper left extremity. (R. 25, 381, 698, 830). Further, two of those assessments were subsequent to Dr. Kumar's evaluation of Claimant. (R. 698, 830). Additionally, the ALJ's opinion specifically cites other medical evidence indicating Claimant reported his left shoulder felt "significantly better" and he had regained full range of motion of his left shoulder following physical therapy. (R. 23, 425). While there certainly is more room for explanation by the ALJ as to the inconsistency between Dr. Kumar's report and the RFC determination relating to Claimant's left arm, the ALJ's summary of the medical evidence and the weight he assigned other opinion evidence makes clear to this court his basis for not including that degree of limitation in his RFC, that being its inconsistency with other evidence in the record. *Cf. Gordon v. Schweiker*, 725 F.2d 231, 236 (4th Cir. 1984) (noting where a reviewing court cannot know why the ALJ rejected relevant evidence in the record, remand is necessary to clarify the basis for denial of benefits).

As for the FCE evaluation, Claimant contends the ALJ improperly considered the FCE's conclusion that Claimant was capable of light work because the specific findings within the FCE report as to Claimant's lifting, standing, and walking dictate a finding that Claimant is only capable of sedentary work. Pl.'s Mem. at 9. The ALJ determined that Claimant had the RFC to perform light work with the addition of several physical limitations. (R. 22). In his discussion of the record evidence, the ALJ specifically noted that the FCE performed on January 19, 2010 concluded that Claimant's "minimal overall level of work falls within the light range." (R. 24). Upon reviewing Claimant's argument, it is apparent that Claimant believes the ALJ improperly weighed the FCE.

16

However, the court's duty is to determine if substantial evidence supports the ALJ's conclusions – not to reweigh conflicting evidence. *See Mastro*, 270 F.3d at 176 (citation omitted).

In this case, the ALJ sufficiently considered the FCE and its findings and evaluated it in accordance with the regulatory guidelines. Moreover, while the ALJ did not explicitly address specific findings within the FCE which Claimant contends are contradictory to the RFC finding, the ALJ clearly did not find these specific findings determinative of Claimant's work ability as Claimant suggests they should be. It is apparent to this court that the ALJ once again, as previously discussed, relied on the minimal diagnostic findings, conservative treatment methods, minimal pain medication usage by Claimant, and improvement from physical therapy and use of braces in determining Claimant was capable of light work. (R. 22-25). The ALJ considered the record as a whole, which included conflicting evidence as to Claimant's work ability, and gave weight to the FCE's findings to the extent he found them supported by evidence in the record. The ALJ's determination that Claimant is capable of more than sedentary work is supported by the ALJ's summary of the medical evidence and the court will not re-weigh conflicting evidence so long as the ALJ's finding is supported by substantial evidence.

Accordingly, Claimant's argument as to the ALJ's consideration of the opinion evidence is without merit.

## CONCLUSION

For the reasons stated above, this court RECOMMENDS Claimant's Motion for Judgment on the Pleadings [DE-22] be DENIED, Defendant's Motion for Judgment on the Pleadings [DE-24] be GRANTED and the final decision of the Commissioner be UPHELD.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the

respective parties, who have fourteen (14) days upon receipt to file written objections. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Court.

Submitted, this the 28th day of August, 2013.

Robert B. Jones, Jr.
United States Magistrate Judge