IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

No. 4:12-CV-189-FL

| | | |
|---|---|---|
| JEFFREY D. MOORE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This matter comes before the court on the parties' cross motions for judgment on the pleadings (DE 22, 24).[1] Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b), United States Magistrate Robert B. Jones, Jr., issued a memorandum and recommendation ("M&R"), wherein it is recommended that the court deny plaintiff's motion, grant defendant's motion, and that the final decision by defendant be affirmed. Plaintiff timely filed objections to the M&R and the response time has expired. In this posture, the issues raised are ripe for ruling. For the reasons that follow, the court adopts the recommendation of the magistrate judge.

## BACKGROUND

Plaintiff filed an application for a period of disability and disability insurance benefits, on July 6, 2006, alleging disability beginning March 1, 2006. This application was denied initially, and initial hearing was held before an Administrative Law Judge ("ALJ") who determined on December 19, 2008, that plaintiff was not disabled during the relevant time period. The appeals council

---

[1] Pursuant to Fed. R. Civ. P. 25(d), Carolyn W. Colvin, Acting Commissioner of Social Security, has been named as defendant in this case in place of former Commissioner Michael J. Astrue.

remanded the claim to the ALJ for further proceedings, and a second hearing was held before an ALJ on January 19, 2011. On February 15, 2011, the ALJ entered a second decision determining that plaintiff was not disabled from the alleged onset date of March 1, 2006, through his date last insured of December 31, 2010. Plaintiff sought appeals council review and submitted additional evidence. The appeals council denied plaintiff's request for review on July 14, 2012, and plaintiff filed the instant action on August 21, 2012.

**DISCUSSION**

A.   Standard of Review

The court has jurisdiction under 42 U.S.C. § 405(g) to review the Commissioner's final decision denying benefits. The court must uphold the factual findings of the ALJ "if they are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). "Substantial evidence is . . . such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quotations omitted). The standard is met by "more than a mere scintilla of evidence but . . . less than a preponderance." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966).

To assist it in its review of the Commissioner's denial of benefits, the court may "designate a magistrate judge to conduct hearings . . . and to submit . . . proposed findings of fact and recommendations for the disposition [of the motions for judgment on the pleadings]." See 28 U.S.C. § 636(b)(1)(B). The parties may object to the magistrate judge's findings and recommendations, and the court "shall make a de novo determination of those portions of the report or specified

2

proposed findings or recommendations to which objection is made." Id. § 636(b)(1). Absent a specific and timely filed objection, the court reviews only for "clear error," and need not give any explanation for adopting the M&R. Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005); Camby v. Davis, 718 F.2d 198, 200 (4th Cir.1983). Upon careful review of the record, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

The ALJ's determination of eligibility for Social Security benefits involves a five-step sequential evaluation process, which asks whether:

> (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a medical impairment (or combination of impairments) that are severe; (3) the claimant's medical impairment meets or exceeds the severity of one of the impairments listed in [the regulations]; (4) the claimant can perform [his] past relevant work; and (5) the claimant can perform other specified types of work.

Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (citing 20 C.F.R. § 404.1520). The burden of proof is on the claimant during the first four steps of the inquiry, but shifts to the Commissioner at the fifth step. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995).

In the instant matter, the ALJ performed the sequential evaluation. At step one, the ALJ found that plaintiff was no longer engaged in substantial gainful employment. At step two, the ALJ found that plaintiff had the following severe impairments: left shoulder adhesive capsulitis; hammertoes; major depressive disorder; cervical spondylosis; carpal tunnel syndrome; and lumbar degenerative disc disease. However, at step three, the ALJ determined that these impairments were not severe enough to meet or medically equal one of the listed impairments in the regulations. Prior to proceeding to step four, the ALJ determined that plaintiff had the residual functional capacity

("RFC") to perform light work, with the following physical limitations: frequent fingering and handling; occasional reaching overhead with left upper extremity; occasional balancing and climbing; frequent stooping, kneeling, crouching, and crawling; and decreased ability to concentrate on and attend to work tasks to the extent that he could only do simple, routine and repetitive tasks. At step four, the ALJ determined that plaintiff could perform his past relevant work. In the alternative, the ALJ proceeded to step five and determined that plaintiff could adjust to the demands of other employment opportunities existing in significant numbers in the national economy. Accordingly, the ALJ determined that plaintiff was not under a disability during the relevant time period.

B.  Analysis

    1. The ALJ's Credibility Determination

Plaintiff argues the ALJ made a conclusory finding as to plaintiff's credibility and failed to adequately explain why he found plaintiff not credible. This argument is correctly addressed in the M&R, and the court adopts and incorporates herein the thoughtful analysis of the M&R. (See M&R 9-13). In addition, the court notes the following points in supplement to the M&R.

In his objection, plaintiff contends that the magistrate judge improperly determined that the ALJ's "rote recitation" of plaintiff's medical records satisfied the ALJ's duty to explain. (Obj. 1). Plaintiff, however, mischaracterizes the discussion in the ALJ's decision. The ALJ in fact engaged in a detailed analysis of plaintiff's statements regarding his symptoms and the medical evidence of the same. The ALJ's analysis of the evidence begins with the following introductory statements:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the

4

alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment. The above assessment is supported by the objective medical evidence of record and other evidence of record.

(Tr. 22). Then, the ALJ continues by noting "[t]he medical evidence demonstrates that . . . ." followed by a detailed discussion of the medical evidence spanning over two pages of the decision. (Tr. 22-25). Far from a mere "rote recitation," the ALJ's discussion of the evidence juxtaposes in many instances subjective statements by the plaintiff with the objective medical evidence in the record. For example, the ALJ notes:

> "On September 12, 2006, the claimant reported shoulder and neck pain . . . . On examination, the claimant had tenderness in the shoulder and neck region. He was unable to move his shoulder fully. <u>He reported not taking anything for pain, however</u>."
>
> "On October 30, 2006, the [claimant] complained of worsening left shoulder pain . . . . <u>There were no major findings on examination. Treating providers proscribed medication, and told the claimant that he should avoid heavy lifting, pushing, or pulling</u> . . . and that he should engage in regular exercise. . . ."
>
> "On November 27, 2006, the claimant underwent an orthopedic evaluation for left shoulder pain. The claimant reported that he was unemployed and currently applying for disability for his foot. <u>Nothing was mentioned about any other condition. He was not taking any medications</u>. . . ."
>
> "The claimant told treating providers on December 13, 2006, that his <u>left shoulder had gotten better</u>, but that he still had pain that came and went at random . . . ."
>
> "On April 2, 2007, the claimant told treating providers that <u>his left shoulder felt significantly better</u>. He had finished physical therapy and started doing exercises on his own . . . ."
>
> "On March 18, 2009 . . . . <u>[t]here were no major problems indicated on [consultative] examination, except for inability to raise the left arm to shoulder level</u>. . . ."
>
> "[O]n December 23, 2009 . . . [plaintiff] complained of depression due to an inability

5

> to work. He told treating providers that the had two daughters who live with him and his wife – one, 33, has cerebral palsy . . . . [and] <u>the claimant must provide care to his disabled daughter</u>. . . ."
>
> "A work evaluation performed on January 19, 2010, concluded that the claimant's <u>minimal overall level of work falls within the light range</u>."

(Tr. 22-24) (emphasis added). In this manner, the ALJ's discussion properly "refer[s] specifically to the evidence informing the ALJ's conclusion" regarding credibility. <u>Hammond v. Heckler</u>, 765 F.2d 424, 426 (4th Cir. 1985). It "contain[s] specific reasons for the finding on credibility, supported by the evidence in the case record, and [is] sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p, 1996 WL 374186. Accordingly, plaintiff's objection is overruled.

      2. Weight given to consultative examiner opinion

Plaintiff argues the ALJ failed to explain the weight given to the consultative examination by Dr. Kumar or address inconsistencies between Dr. Kumar's report and the ALJ's RFC determination. The M&R correctly determined that this argument is without merit, and the court adopts and incorporates the analysis of the M&R, (<u>see</u> M&R 15-16), except as modified herein.

When making an RFC assessment, an ALJ "must always consider and address medical source opinions." SSR 96-8P, 1996 WL 374184, *7 (July 2, 1996). Generally, the Commissioner must "give more weight to opinions from [a claimant's] treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such

6

as consultative examinations or brief hospitalizations." 20 C.F.R. § 404.1527(c)(2). The commissioner also generally must give "more weight to the opinion of a source who has examined [the claimant] than to the opinion of a source who has not examined [the claimant]." § 404.1527(c)(1). In addition, "[s]tate agency medical and psychological consultants . . . are highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation." § 404.1527(e)(2)(i). "Therefore, administrative law judges must consider findings and other opinions of State agency medical and psychological consultants and other program physicians, psychologists, and other medical specialists as opinion evidence. . . ." Id.

While a treating or examining physician opinion is generally accorded more weight, "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001) (citing Craig, 76 F.3d at 590)). "If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." S.S.R. 96-8p, 1996 WL 374184, *7 (July 2, 1996)). The ALJ's decision "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave" to the opinion and "the reasons for that weight." S.S.R. 96–2p, 1996 WL 374188, at *5 (July 2, 1996)).

In this case, the ALJ's discussion of the evidence in the record is sufficiently specific to make clear to the court the weight he gave to Dr. Kumar's opinion and the reasons for that weight. In particular, in the course of describing the medical evidence bearing on the RFC determination, the ALJ noted that plaintiff underwent a consultative physical examination with Dr. Kumar on

7

March 18, 2009, at which "[t]here were no major problems indicated on examination, except for an inability to raise the left arm to shoulder level." (Tr. 23). At the same time, the ALJ also described in detail a number of additional examination reports made by "treating providers," which confirmed lesser degrees of limitation in movement of left shoulder over the course of the period of alleged disability, including reports that range of motion and pain benefitted from medication and therapy. (Tr. 23, 389-90, 401, 422, 425 ("shoulder feels significantly better," "regained full range of motion")). The ALJ also described activities of daily living, including care of his disabled daughter. (Tr. 24). In concluding this discussion of the evidence, the ALJ stated that "[t]he foregoing, taken together, supports the above residual capacity assessment," in which the ALJ limited plaintiff to "occasional[] reaching overhead with left upper extremity." (Tr. 21, 25). As such, the ALJ manifestly did not include the full limitation stated in Dr. Kumar's consultative examination because it was not consistent with the other evidence of record, including evaluations by treating providers.

The ALJ further confirmed the weight given to Dr. Kumar's examination, and his reasons for discounting it in part, in discussing opinion evidence. In particular, the ALJ noted "[a]s for opinion evidence, the undersigned placed moderate weight in the State agency medical assessments. The claimant is capable of performing work activity at no more than the light level, based upon the new evidence submitted to the file." (Tr. 25). Three such state agency medical assessments in the record by non-examining physicians are consistent with the ALJ's RFC determination regarding left arm limitations:

- A September 12, 2006, medical assessment by Dr. Perry Caviness, providing an RFC of medium work with additional limitation, including occasional left upper extremity overhead reaching. (Tr. 381, 385).

- A March 25, 2009, medical assessment by Dr. Frank Virgili, noting RFC limitation limited in "occasional overhead left" reaching. (Tr. 698, 702).

- An August 5, 2009, medical assessment by Dr. E. Woods, noting medium RFC with postural limitations including occasional overhead reaching in left upper extremity. (Tr. 830, 834).

Notably, two of these assessments evaluate and refer specifically to Dr. Kumar's evaluation, as well as other medical evidence in the record bearing on plaintiff's left shoulder limitation. (Tr. 702, 834). These assessments, taken together with the other medical evidence in the record, constitute substantial evidence supporting the ALJ's RFC determination that plaintiff is capable of performing light work with limitations, including "occasional[] reaching overhead with the left upper extremity." (Tr. 21). By then stating that "[w]eight was afforded . . . the consultative examination reports on file . . . to the extent that they were consistent with the above assessment," (id.), the ALJ confirmed that Dr. Kumar's report was not given weight to the exten it was inconsistent with the other evidence in the record.

While plaintiff takes issue with the ALJ's reliance upon the opinion of non-examining physicians over the evaluation of the consultative examiner, (Obj. 2), the Fourth Circuit has observed that "the testimony of a non-examining physician can be relied upon when it is consistent with the record." Gordon v. Schweiker, 725 F.2d 231, 235 (4th Cir. 1984). "Furthermore, if the medical expert testimony from examining or treating physicians goes both ways, an ALJ's determination coming down on the side on which the non-examining, non-treating physician finds himself should stand." Id. This is similar to the circumstances here, where there is mixed medical evidence in the record concerning plaintiff's ability to raise his left arm, and the ALJ's determination coming down on the side of the non-examining physician must therefore withstand judicial review.

9

Accordingly, plaintiff's objection is overruled.

      3. Functional Capacity Evaluation

Plaintiff contends the ALJ improperly considered a Functional Capacity Evaluation (FCE) by Nathan Hill, MPT, performed on January 19, 2010. (Obj. 2-3). The M&R correctly determined that this argument is without merit, and the court adopts and incorporates the analysis of the M&R, (see M&R 13-14, 16-17). The ALJ noted that the FCE concluded that plaintiff's "minimal overall level of work falls within the light range," and that the ALJ afforded weight to the work evaluation to the extent that it was consistent with the M&R. (Tr. 24, 25). Although plaintiff argues in his objection that specific findings within the FCE dictate a finding that plaintiff is only capable of sedentary work, the FCE itself concludes that plaintiff is "capable of sustaining the Light Level of work for an 8-hour day/40-hour week," and it notes further that "the overall level of work was significantly influenced by the client's self-limiting and inconsistent behavior" during the testing. (Tr. 893). Accordingly, where the conclusion of the report is consistent with and in some respects less restrictive than the ALJ's RFC determination, any failure on the part of the ALJ to further address the specific observations in the report is harmless. Accordingly, this objection is overruled.

## CONCLUSION

Upon *de novo* review of those portions of the M&R to which specific objections have been filed, and upon considered review of those portions of the M&R to which no such objection has been made, the court ADOPTS the recommendation of the magistrate judge, except to the extent modified herein, and DENIES plaintiff's motion for judgment on the pleadings (DE 20), GRANTS defendant's motion for judgment on the pleadings (DE 28), and AFFIRMS the final decision by

10

defendant.  The clerk is DIRECTED to close this case.

      SO ORDERED this the 26th day of September, 2013.

_____
LOUISE W. FLANAGAN
United States District Judge